**UNITED STATES of America,**

v.

**Omar Ahmad Ali Abdel RAHMAN, et al., Defendant.**

**No. S3 93 Cr. 181 (MBM).**

United States District Court, S.D. New York.

Nov. 4, 1994.

**49**

Mary Jo White, U.S. Atty. for S.D. New York, Patrick J. Fitzgerald, Robert S. Khuzami, Andrew C. McCarthy, Alexandra Rebay, Asst. U.S. Attys., New York City, for U.S.

Stanley Rothstein, Leonard Bailey (Trial Attorneys), Terrorism and Violent Crimes Section, Crim. Div., U.S. Dept. of Justice, Washington, DC, for U.S.

## OPINION AND ORDER

MUKASEY, District Judge.

The government has moved *ex parte* pursuant to Section 4 of the Classified Information Procedures Act, 18 U.S.C.App. § 4[1] and Fed.R.Crim.P. 16(d)(1)[2] for an *in camera* review of groups of documents said to contain classified information, and of the submission accompanying such information, and for an order barring disclosure of such information. Although the government has not provided a copy of its submission to defense counsel, the government did advise defense counsel by letter dated July 22, 1994 that it had filed a Petition for Nondisclosure of Classified Information. For the reasons set forth below, the government is directed to disclose certain information to defense counsel; the remainder of the government's motion is granted.

■ The six groups of documents correspond to four exhibits attached to the declaration of Hugh E. Price, Deputy Director of Operations, Central Intelligence Agency, sworn to July 21, 1994 (Price Decl. Ex. A–D), and two exhibits attached to the affidavit of

---

1. The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

2. Protective and Modifying Orders. Upon a sufficient showing the court may at any time order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate. Upon motion by a party, the court may permit the party to make such showing, in whole or in part, in the form of a written statement to be inspected by the judge alone. If the court enters an order granting relief following such an ex parte showing, the entire text of the party's statement shall be sealed and preserved in the records of the court to be made available to the appellate court in the event of an appeal.

Robert S. Khuzami, Esq., sworn to July 22, 1994 (Khuzami Decl. Ex. B, D). Although the statute does not set forth specifically a procedure to be followed by the court in connection with the current motion, it would seem that a reasonable way to proceed would be to determine (i) whether the information in question is properly deemed classified for purposes of the statute, then (ii) whether any of the classified information is discoverable under any otherwise applicable rule, then (iii) whether any of the classified information would be material or helpful to preparing the defense of any defendant, thereafter (iv) whether such information should be disclosed, and finally (v) if such classified information should be disclosed, whether it should be disclosed in some form other than the form in which it was submitted to the court. *See* 18 U.S.C.App. § 6(c)(1), authorizing "(A) the substitution for such classified information [as might otherwise be ordered to be disclosed] a statement admitting relevant facts that the specific classified information would tend to prove; or (B) the substitution for such classified information of a summary of the specific classified information."

 The statute defines "classified information" in relevant part as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security...." 18 U.S.C.App. § 1. It appears to my eye unquestionable that the six exhibits at issue have been properly deemed classified. With respect to the four exhibits attached to the Price declaration, each is stamped "Secret." The declaration itself establishes in detail the affiant's own authority in overseeing the kinds of activities the documents reflect and assuring that proper classification procedures are followed (Price Decl. ¶¶ 1–2, 12), as well as how the intelligence gathering activities and/or the national security of the United States could be harmed by disclosure of either what is in the classified documents or how that information was gathered. (Price Decl. ¶¶ 3–11, 13–38) In particular, disclosure of the documents would reveal intelligence sources (Price Decl. ¶¶ 15–18); methods of gathering intelligence (Price Decl. ¶¶ 19–34);

and information that could compromise the foreign relations of the United States (Price Decl. ¶¶ 35–37).

The two documents attached to the Khuzami declaration on their face contain confidential evaluations used in dealing with foreign governments (Khuzami Decl. Ex. B) and confidential information received as part of the conduct of the foreign relations of the United States (Khuzami Decl. Ex. D). Further, Khuzami has confirmed in a supplemental declaration, dated October 19, 1994, that the two documents do in fact contain classified information.

The next step is to determine whether the documents contain information that would be discoverable under any otherwise applicable rule. Here, I use "discoverable" in its broadest sense, to include both what should be made available in pretrial discovery, as well as exculpatory facts, or information relevant to the credibility of government witnesses, that need not be disclosed before trial but nonetheless must be made available in time for effective use at trial. *See United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481 (1985); *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977). The documents contain three categories of such information that is at least potentially discoverable. The first is prior statements by a defendant that may be relevant to the charges in the indictment, discoverable under Fed.R.Crim.P. 16(a)(1)(A). The second is arguably exculpatory information potentially discoverable under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The third is information relating to the credibility of government witnesses, potentially discoverable under *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

The three documents that comprise Exhibit A to the Price declaration contain three statements of defendant Omar Ahmad Ali Abdel Rahman that may be relevant to the charges in the indictment and that would be discoverable under Fed.R.Crim.P. 16(a)(1)(A). Of these, two are, if anything, inculpatory. The third, which appears on the

fourth page of the exhibit, is at most mildly exculpatory insofar as it may suggest the absence of an inclination to flee before the indictment in this case. However, because the statement concerns a time period before the indictment in this case it is not at all clear that the statement is even relevant to the charges in the indictment.

The first of the two documents that comprise Exhibit B to the Price declaration contains information relating to the credibility of a potential government witness which is potentially discoverable under *Giglio, supra.* The second contains information on its fifth page that relates to Rahman, that includes what the author states on second-hand knowledge are Rahman's statements, and that, when considered as a whole, is inculpatory.

Exhibit C to the Price declaration is one document indicating that a person with whom the government has contact may possess information exculpatory of defendant Ibrahim El–Gabrowny.

Exhibit D to the Price declaration consists of three documents containing information that groups or individuals other than those charged with participating in the conspiracies described in Counts One and Three of the indictment in this case, who include those convicted in *United States v. Salameh, et al.,* 93 Cr. 180, claimed responsibility for the February 1993 bombing of the World Trade Center. As shown in Exhibit C to the Khuzami declaration, similar information was disclosed to defense counsel in the *Salameh* case.

Of the two classified attachments to the Khuzami declaration, the first, Exhibit B, contains an expression of opinion which, although exculpatory of Rahman, is in no event admissible, as discussed more fully below, unless the source of that opinion testifies as a government witness about a subject within the scope of the opinion. The second, Exhibit D, contains an expression of negative opinion with respect to the credibility of a potential government witness but no indication of the speaker's competence, as well as other expressions of opinion that would not be admissible at trial.

In order to complete the analysis of whether any of this material is at least potentially discoverable, it remains only to lay the above canvass of the exhibits alongside the relevant rules. As noted above, there are three categories of such information: prior statements by a defendant, information that is exculpatory of a defendant, and information relating to the credibility of a potential government witness. Rahman's statements contained in Exhibit A to the Price declaration that may be relevant to the subject of the indictment ordinarily would be discoverable under Fed. R.Crim.P. 16(a)(1)(A). To the extent the fifth page of the second document attached as Exhibit B to the Price declaration recites what may purport to be statements by Rahman, they too will be considered, in an excess of caution, as statements within the meaning of the Rule, and thus discoverable.

■ The government is obligated under *Brady* and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), to disclose information in its sole possession that is "material" to the issue of guilt or innocence. The government places heavy reliance on the cases that hold information is "material" if "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682, 105 S.Ct. at 3383. However, as the past and contrary-to-fact-subjunctive tense of the quoted segment suggests, cases such as *Bagley* and *United States v. Maniktala,* 934 F.2d 25, 28 (2d Cir.1991) (defining "material" exculpatory evidence as that which "would have enabled the defendant significantly to alter the quantum of proof in his favor"), deal with the issue of materiality after a conviction. They provide only limited guidance before trial, when the potential significance of some evidence may not be fully apparent. Viewing the information at issue in the light most favorable to defendants, the one document that may be said to contain potential *Brady* material is Exhibit C to the Price declaration, which discloses that a person with whom the government has contact may possess information exculpatory of El–Gabrowny. The government has acknowledged its *Brady* obligation to determine whether that person has such information,

and if so what it is. The government is to pursue that issue diligently. If the government does not agree to tell El–Gabrowny what it learns, the government is to tell the court what it learns. In any event, should the person identified in the exhibit testify at trial in a manner that inculpates El–Gabrowny, the court will consider whether the information contained in the exhibit should be made available to El–Gabrowny's attorney.

Claims by individuals or groups, other than those charged or convicted in this court, that they were responsible for the February 1993 bombing of the World Trade Center, were disclosed to counsel in *Salameh,* although the government for obvious reasons disputes whether they are to be considered *Brady* material. I understand the government to have undertaken to disclose claims such as those contained in Exhibit D to the Price declaration and those already disclosed in *Salameh,* in like fashion in this case, and thus there is no occasion to decide whether they are discoverable as *Brady* material.

■ The expression of opinion contained in Exhibit B to the Khuzami declaration is, in essence, only a prediction of the likely course of an investigation. It is not evidence, does not suggest the existence of evidence, and therefore is not discoverable as *Brady* material.

■■ Finally, the first of the documents attached as Exhibit B to the Price declaration contains information about the credibility of a potential government witness, and thus is discoverable under *Giglio.* The negative expression of opinion with respect to the credibility of a potential government witness, contained in Exhibit D, although of a kind potentially admissible under Fed.R.Evid. 608(a), which permits expressions of opinion as to credibility, contains nothing to indicate the competence of the person offering the opinion, or even the identity of that person. Because such an expression of opinion would not materially assist the jury in evaluating the credibility of the potential witness, the document cannot be considered to contain *Giglio* material.

Because I have determined that some of the information submitted for review is dis-coverable within the broad definition adopted above, it is necessary now to decide whether it should be disclosed and, if so, in what form. Here, the test to be applied involves balancing the defendant's need for the information or its value to the defendant, against the possible damage to the government's security interests from disclosure. Certain courts have drawn an analogy between deciding whether to direct disclosure of classified information and deciding whether to direct disclosure of a government informant's identity pursuant to *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). *United States v. Pringle,* 751 F.2d 419, 428 (1st Cir.1984), *vacated and remanded on other grounds sub nom. United States v. McAfee,* 479 U.S. 805, 107 S.Ct. 49, 93 L.Ed.2d 10 (1986); *United States v. Yunis,* 867 F.2d 617, 622–23 (D.C.Cir.1989). Another, without reference to *Roviaro,* has endorsed the need to strike a balance. *United States v. Sarkissian,* 841 F.2d 959, 965 (9th Cir.1988).

■ Applying such a test to the information at issue here, the first and obvious result is that inculpatory material which the government does not intend to offer at trial need not be disclosed. Such information cannot conceivably help a defendant, and therefore is both unnecessary and useless to him. Thus, the statements contained in the first two documents attached as Exhibit A to the Price declaration, and the statements contained on the fifth page of the second of the documents attached as Exhibit B to the Price declaration, all inculpatory of Rahman, need not be disclosed.

■ Rahman's statement, contained in the last of the three documents attached as Exhibit A to the Price declaration, indicates at most that he was disinclined to flee before the indictment in this case. One might argue that if flight may be proved to show a defendant's consciousness of guilt, then failure to flee may be proved to show his consciousness of innocence. There are flaws in that logic. To begin with, flight itself may be highly ambiguous, and juries generally are instructed that they need not consider it as reflecting consciousness of guilt. *See, e.g., United States v. Castro,* 813 F.2d 571, 578 (2d Cir.), *cert. denied,* 484 U.S. 844, 108 S.Ct. 137, 98 L.Ed.2d 94 (1987). The failure to flee here,

if that is what it was, is even more ambiguous, because (i) the proof relates to a time before the indictment in this case, and (ii) it is unclear whether flight was feasible, let alone whether it was feasible in the manner referred to in the document. The relevance of this proof, if any, is gossamer. To the extent it may be relevant, the underlying facts presumptively are known to Rahman; after all, it is his statement that is in question. Finally the prejudice to the government from disclosing its knowledge of this particular statement would be substantial because to do so would potentially disclose an intelligence source and also potentially injure the foreign relations of the United States. Here, the balance weighs against disclosure.

Of the *Giglio* material discussed above, only the information contained in the first of the documents attached as Exhibit B to the Price declaration, relating to the credibility of a potential government witness, need be disclosed. Here, it is sufficient to disclose the substance of the information, and I do not understand the government to oppose such disclosure. The document itself need not be disclosed.

 There remains only the issue of whether the government's submission itself or any part of it should be disclosed. The Price and Khuzami declarations discuss the substance of the classified information submitted for review, and other classified information, and need not be disclosed. Exhibits A and C to the Khuzami declaration are correspondence that is not classified and should be disclosed. The government's memorandum of law, like the declarations, discusses the substance of the classified information submitted for review and other classified information, and will not be disclosed.

Except as set forth above, the government's motion is granted. The submissions in question will be sealed and kept in the possession of the court security officer, and made available for appellate review, if necessary.

SO ORDERED.